CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
10/10/2017
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
    DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
LYNCHBURG DIVISION

| | |
|---|---|
| ZEN42 LLC,<br><br>　　　　　　　　*Plaintiff*,<br><br>v.<br><br>WASHINGTON AND LEE UNIVERSITY.<br><br>　　　　　　　　*Defendant*. | CASE NO. 6:17-cv-00053<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

　　　　This diversity case involves a contract dispute between the supplier of water treatment systems, Plaintiff ZEN42, LLC ("Zen42") and a purchaser, Defendant Washington and Lee University ("W&L"). Zen42 asserts a single breach of contract count based on two theories—that W&L prematurely terminated the contract on May 19, 2016 and that it failed to make monthly payments to Zen42 after that date. (Complaint ¶¶ 30–31). Zen42 now seeks judgment on the pleadings, claiming W&L's answer to the Complaint admitted facts that prove W&L's liability as a matter of law. But the pleadings construed in W&L's favor do not entitle Zen42 to judgment, so the motion will be denied.

**STANDARD OF REVIEW**

　　　　Federal Rule of Civil Procedure 12(c) permits a party to "move for judgment on the pleadings" after "the pleadings are closed." "The federal courts have followed a fairly restrictive standard in ruling on motions for judgment on the pleadings" because "hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense." 5C Wright and Miller *et al.*, *Federal Practice and Procedure* § 1368 (3d ed. Westlaw). In one sense, a Rule 12(c) motion is the mirror image of a Rule 12(b) motion. Whereas a defendant moves to dismiss under Rule

12(b) after the plaintiff files a complaint, Rule 12(c) affords the plaintiff a chance to obtain judgment after the defendant files his answer.[1]

A "party moving for a judgment on the pleadings impliedly admits [for purposes of the motion] the truth of its adversary's allegations and the falsity of its own assertions that have been denied by that adversary." 5C Wright and Miller *et al.*, *Federal Practice and Procedure* § 1370 (3d ed.); *see Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 588 n.4 (4th Cir. 2004) (noting that facts are viewed on a motion for judgment on the pleadings "in the light most favorable to the nonmoving party"). So when "the plaintiff moves for judgment on the pleadings, the motion should be granted if, on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law." *Walker v. Liberty Mut. Ins. Co.*, No. 4:16-CV-01388-RBH, 2017 WL 1020884, at *1 (D.S.C. Mar. 16, 2017); *see Smurfit-Stone Container Enterprises, Inc. v. Nat'l Interstate Ins. Co.*, No. 3:08CV093-HEH, 2008 WL 4153762, at *4 (E.D. Va. Sept. 5, 2008); *see*, *e.g.*, *A. S. Abell Co. v. Baltimore Typographical Union No. 12*, 338 F.2d 190, 192–93 (4th Cir. 1964) (affirming plaintiff's motion for judgment "since the pleadings raised no issue of fact"). Accordingly, the Court first reviews the allegations in Zen42's complaint before considering them vis-à-vis the answer.

## THE COMPLAINT AND ATTACHMENTS

Zen42 alleges that, in September 2012, it and W&L entered into a Water Services Agreement, or WSA, which Zen42 attached to the Complaint. (Complaint ¶¶ 5–6).

---

[1] A defendant may also make a 12(c) motion, provided he waits until "the pleadings are closed," *i.e.*, after he has answered. Fed. R. Civ. P. 12(c). The standard of review for a defendant's 12(b)(6) motion and his 12(b)(c) are the same—the Court must in each instance construe the facts in plaintiff's favor. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 702 (4th Cir. 2016); *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014).

Amendments to the WSA were made on March 13, 2013, and June 30, 2015. (*Id*. ¶ 5). Zen42 asserts that the "WSA constitutes an enforceable contract" between the parties. Many of Zen42's allegations consist of quotations from the purported contract.

The WSA had a 60-month term beginning on July 1, 2014. (*Id*. ¶¶ 7–8). Zen42 quotes § 8(b)(ii), which gave Zen42 60 days to correct noncompliance with the WSA's "minimum performance standard." (*Id*. ¶¶ 10). After the 60-day cure period, W&L was permitted to terminate the WSA with 20-days written notice. (*Id*. ¶ 11).

Zen42 asserts W&L terminated the contract by letter on May 19, 2016. (Complaint ¶ 12). The letter is attached to the Complaint. (Dkt. 1-2 at ECF 2). It first thanks Zen42 for providing two documents from April 2016, although those documents are not presently in the record. (*Id*.). It then recounts issues dating back to April 2014 with "seed crystals" in Zen42's water treatment system. (*Id*.). For instance, the letter references and attaches an email where a representative of Zen42 acknowledged the system was not performing well. (*Id*. at ECF 2, 12). The letter concludes by stating "it's in the best interest of the University to discontinue our reliance on this system for condenser water management. To that end, this letter constitutes written notice of termination of our contract with Zen42LLC." (*Id*. at ECF 2; Complaint ¶ 14).

Zen42 alleges W&L did not have grounds to terminate the contract, and thus the termination was a breach. (Complaint ¶ 15). It quotes the WSA's "minimum performance standard" as stating that "[c]ycles of concentration will be controlled at a minimum set point of 1250 PPM TDS." (*Id*. ¶ 17). Zen42 does not explain this jargon, but it does allege conclusorily that "the presence or absence of 'seed crystals'" is nowhere mentioned in the WSA. (*Id*. ¶ 18).

Additionally, Zen42 contends W&L breached the contract by failing to allow Zen42 a 60-day cure period and by failing provide the requisite 20-days written notice of termination after

the cure period. (Complaint ¶¶ 19–20).

Finally, Zen42 alleges that W&L "made no further monthly payments" to Zen42 after the May 19, 2016 letter, and that the failure to do so was an event of default under the WSA. (Complaint ¶¶ 24–25).

## THE ANSWER

W&L's answer denies most of these allegations. Three admissions are key to Zen42's motion, however.

First, in response to Zen42's allegations about the existence of the WSA, W&L "admits that it entered into *a* Water Services Agreement . . . and *certain* amendments thereto (collectively, 'Agreement'), which Agreement speaks for itself." (Answer ¶ 5 (emphasis added)). W&L thus concedes an agreement of some sorts with Zen42. (*Id*. ¶ 6 (emphasis added)).

Second, W&L admitted that the letter attached to the Complaint "is a letter sent from [W&L] to [Zen42] on or about May 19, 2016, which letter speaks for itself." (Answer ¶ 12). W&L denied the remainder of Plaintiff's allegations, which include the contention that, by the letter, W&L terminated the WSA. (Complaint ¶ 12).

Third, W&L admitted that "[f]ollowing the May 19, 2016 letter, [it] made no further monthly payments" to Zen42. (Complaint ¶ 24; Answer ¶ 24).

The answer also listed five defenses: (1) failure to state a claim; (2) absence of a breach; (3) a first breach by Zen42; (4) damages caused by Zen42's own actions, and; (5) failure to mitigate damages.

## ANALYSIS

Zen42's motion is thin gruel—for example, it does not attempt to define, interpret, or

explain important contractual terms or industry lingo such as "seed crystals," "cycles of concentration," or "minimum set point." The motion also relies on an overly favorable (to Zen42) interpretation of W&L's answer. In fairness, W&L's answer is not a model of precision either. "It is evident that, in its answers [W&L] intended a somewhat delicate parsing of [Zen42's] allegations," *Equitable Prod. Co. v. Elk Run Coal Co.*, No. CIV. A. 2:08-00076, 2008 WL 2858525, at *2 (S.D.W. Va. July 22, 2008), a point confirmed by the fine distinctions in W&L's brief. W&L admits, for instance, to the existence of some kind of agreement between the parties. But it indicates that the documents attached to the Complaint do not represent the complete nature of that agreement. (*E.g.*, Answer ¶¶ 5–6; dkt. 16 at 2–6).

In any event, the Court must keep in mind the general judicial policy of resolving cases on the merits, as well as the standard of review, which commands that factual disputes and all reasonable inferences be drawn in W&L's favor. W&L's denials and the gaps in the evidentiary record, which are expected at this early stage, are enough to avert judgment on the pleadings and move this case forward to discovery.

Zen42 contends, and W&L does not dispute, that Virginia law governs this case. When a contract is unambiguous, the Court must interpret its terms; but when it is ambiguous, its meaning should be decided by the jury. *See Online Res. Corp. v. Lawlor*, 285 Va. 40, 54 (Va. 2013); *Greater Richmond Civic Recreation, Inc. v. A. H. Ewing's Sons, Inc.*, 200 Va. 593, 596 (Va. 1959).

Zen42, then, must argue (as it does) that the contract is unambiguous. (Dkt. 12 at 8). It bases this stance on W&L's statement that the documents at issue "speak for themselves." According to Zen42, this is an admission of unambiguous language, per *Brown v. Cranberry Iron & Coal Co.,* 72 F. 96, 102 (4th Cir. 1896), which stated in passing: "The deed speaks for

itself. If there be no ambiguity in it, it explains itself." There are several problems with Zen42's argument.[2]

First, as previously mentioned, Zen42 does not explain what the terms of art at issue here mean. It is, for instance, critical whether the presence of "seed crystals" adheres to or violates the requirement that "cycles of concentration . . . be controlled at a minimum set point of 1250 PPM TDS." But that is not a matter of ordinary English, answerable by one without knowledge of the water treatment system industry. The current record and briefs provide the Court with no guidance on how to interpret these terms or intuit their meaning. As a sort of trump card, Zen42 asserts that "the presence or absence of 'seed crystals' is not recited" anywhere in the WSA. (Dkt. 14 at 4; *see id*. at 10). That appears to be correct, yet it does not end the analysis. It is akin to saying a contract to sell vegetables does not mention tomatoes—true enough, but the matter of interpretation remains.

It may well be that "seed crystals" have nothing to do with "cycles of concentration" and "minimum set points." Or it might be true that seed crystals are encompassed by these terms. The point is that, at this juncture, the Court simply cannot tell. As W&L recognizes:

> Fundamentally, whether seed crystals, or the conditions which led to their formation, constitute a breach of Plaintiff's minimum performance standard that "[c]ycles of concentration will be controlled at a minimum set point of 1250 PPMTDS," or any other applicable performance standard, is a material disputed issue ripe for discovery and clearly a subject matter that calls for expert testimony. . . .

(Dkt. 16 at 7).

Second, the Court cannot at this stage assume that all relevant documents—including the

---

[2] Although not raised by the parties, one difficulty is that Zen42 engages in the fallacy known as "affirming the consequent." When presented with a conditional statement ("If P, then Q"), the reasoning "Q, therefore P" does not necessarily follow. *Brown* presents the conditional statement "If it's not ambiguous, then it speaks for itself." Yet Zen42 flips this proposition, essentially arguing "It speaks for itself, therefore it's not ambiguous."

full extent of the purported contract—are before it. To prove a breach of contract, Zen42 must establish the precise legal obligation the defendant has to it. *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154, 671 S.E.2d 132, 135 (2009). Here, W&L argues that—although it admitted entering into "a" WSA with Defendant and "certain" amendments thereto (Answer ¶ 5)—it has not admitted that the documents attached to the Complaint are the exclusive, governing ones in this case. (Dkt. 16 at 5; *see id*. at 2 ("W&L has denied that Plaintiff's version of the alleged agreement *constitute the full agreement* between the parties") (emphasis added)). For instance, W&L notes that one email attached to the Complaint includes a proposed amendment, yet that proposal was not included by Zen42 in the current record, nor is there an indication whether it was executed. (*Id*. at 3 (citing dkt. 1-2 at ECF 16)). In light of W&L's denials and the attachments to the Complaint, and construing the facts and inferences in W&L's favor, it is reasonable to believe there may be other documents not presently before the Court that form the complete basis of W&L's obligations to Zen42. *See Walker v. Liberty Mut. Ins. Co.*, No. 4:16-CV-01388-RBH, 2017 WL 1020884, at *2 (D.S.C. Mar. 16, 2017) (holding plaintiff not entitled to judgment where answer denied "the exact nature" of settlement agreement).[3] As a result, the Court will not set about deciding a breach of contract question when it cannot be certain the entirety of the contract is before it to interpret.

Additionally, emails attached to the Complaint paint a broader picture of the alleged termination than the one portrayed by Zen42. For instance, W&L points out that the emails

---

[3] In its reply, Zen42 puts for forth a series of speculative estimations and theories about W&L's actions, which ultimately reduce to its sentiment that "common sense tells us that [W&L] would have all of the factual support it needed to raise an actual factual dispute *if such facts were true*." (Dkt. 18 at 3–4 (emphasis in original)). This argument turns the rules of procedure on their head. When answering a complaint and contesting a plaintiff's motion for judgment, a defendant is not obliged to try his case through the pleadings (or briefs). Rather, he is entitled to deny the plaintiff's allegations, proceed to discovery, and force him to prove his case.

reveal problems with Zen42's water system over a year before the May 19, 2016 termination letter. (Dkt. 16 at 3 (citing dkt. 1-2 at ECF 12, 16); *see also* dkt. 1-2 at ECF 14 (August 2015 correspondence)). From this, W&L's denials, and the gaps in the evidentiary record, one could reasonably infer that "there is simply more to the story of how the parties went through the full process of formation, notice, opportunity to cure, and termination, and that story is not yet before the Court." (Dkt. 16 at 3–4).

\* \* \*

In sum, this case is better suited for discovery and summary judgment instead of judgment on the pleadings. 5C Wright and Miller *et al.*, *Federal Practice and Procedure* § 1368 (3d ed. Westlaw) (The "the plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery."). Consequently, the motion will be denied. An appropriate order will issue. The Clerk is directed to send a copy of this opinion and the accompanying order to counsel.

Entered on this __10th__ day of October, 2017.

*[Signature]*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE