CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/26/2018
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ZEN42 LLC,<br><br>                      *Plaintiff*,<br><br>v.<br><br>WASHINGTON AND LEE UNIVERSITY.<br><br>                      *Defendant.* | CASE NO. 6:17-cv-00053<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

What was a single-count, $100,000 breach of contract case is now a $300,000 attorneys' fees litigation. *But see Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (A "request for attorney's fees should not result in a second major litigation."). Plaintiff Zen42, LLC (Zen42) sued Washington and Lee University (W&L) for wrongfully breaching a contract concerning W&L's cooling system. After only five months of litigation and prior to summary judgment, Zen42 accepted W&L's offer of judgment for just under $100,000, exclusive of attorneys' fees. That carve-out precipitated Zen42's motion for contractual fees. The Court referred the matter to Magistrate Judge Robert S. Ballou for a report and recommendation (R&R). The R&R found the fees were excessive and reduced the hourly rates and number of hours requested.

Zen42 makes four broad objections to the R&R. W&L also presents a narrow objection to the amount of fees awarded for the cost of Zen42's expert. The Court finds that, with a limited exception, the objections are not well-taken and thus will be overruled. The Court dispenses with the factual and procedural background, as it is familiar to the parties.

I.    **Hourly Rates**

Zen42 sought hourly rates for two attorneys from the firm of Hirschler Fleischer in Richmond, Virginia. Depending on the year and stage of litigation (*e.g.*, pre-filing, post-filing),

associate Rachel Greenleaf billed between $265 and $295 per hour, while Partner R. Webb Moore billed between $455 and $490 per hour. (R&R at 3–4). Because this case was filed in the Lynchburg division (which reaches nearly to Roanoke, Virginia and encompasses Lexington, Virginia, where the events in question took place), the R&R found the relevant rate market to be central and southwest Virginia. (R&R at 4). Zen42 does not challenge that general principle but contests how the R&R applied it.

1.

Judge Ballou found that, in the relevant market, a prevailing hourly rate of $350 for an attorney with Moore's experience and $250 for an attorney with Greenleaf's experience. (R&R at 6; *see id*. at 3–5). Zen42's first complaint about this conclusion is that the R&R did not follow its own definition of the relevant market: Instead of looking to rates in central and southwest Virginia, the R&R supposedly relied only on southwest Virginia rates, which Zen42 contends are lower than rates in certain central Virginia localities like Charlottesville and Richmond.

After defining the relevant market, the R&R did make a stray remark or two about the hourly rate in (only) southwest Virginia. (R&R at 5–6). But in substance, the R&R clearly considered the rates in central Virginia cities like Lynchburg, Danville, and Charlottesville. (*Id*. (citing cases)). The Court is therefore unconvinced by the objection.

On a related point, Zen42 alleges error in the R&R's refusal to apply rates from the Richmond area, which in Zen42's view would be justified because its Richmond attorneys were "uniquely qualified" to handle the case. (Dkt. 70 at 2). Richmond is of course—in a technical, geographical sense—part of central Virginia. But it is not within the Lynchburg division of this Court. Indeed, Richmond is not even within this judicial district. What's more, the Court is fully in agreement with the R&R's statement that this single-count breach of contract case was

"not so complicated as to require a premium on the prevailing rate for an attorney to handle." (R&R at 4). A party entitled to fees receives a reasonable fee for an attorney who is appropriately credentialed in light of the case's nature. A party is not, however, entitled to force its adversary to pay a premium fee for the party's optimal lawyer. Fee rates in Richmond are simply not an appropriate benchmark for this case.[1]

2.

In a series of finely disaggregated arguments, Zen42 further contends that the rates charged by its attorneys are "supported by case law in this district" and their experts. (Dkt. 70 at 3–6). The gist of these points is that (1) the R&R should not have relied upon W&L's fee expert and instead have relied upon Zen42's expert, and (2) some cases in this district have awarded hourly rates of the type sought by Zen42. But the Court is in accord with the R&R's analysis, based on several cases from this district, that the rates awarded here are appropriate and those sought by Zen42 are excessive in light of the complexity of the case and geographic market. (R&R at 5–6 (compiling cases)).

As for the expert issue, Zen42 claims the R&R gave "undue weight to the unsupported expert testimony" of W&L's fee expert. (Dkt. 70 at 5). The Court has reviewed the affidavit of W&L's expert, Lori Bentley. (Dkt. 58-7). The Court finds she was qualified to opine as an expert on fees based on (1) her twenty-plus years as a practicing litigator in Virginia and this district, including on disputes involving commercial contracts, (2) her service on her firm's executive committee, which sets her firm's fee rates for work throughout the region, (3) her familiarity with the fees of other attorneys, and (4) her review of the documents and bills in this

---

[1] W&L's citation to *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994) is distinguishable and unconvincing for several reasons, including the fact that that case, filed in West Virginia, involved issues far more complex than this case, and the plaintiff sued state and local politicians, making retention of local counsel difficult.

case. Based on those qualifications and experiences, the Court—sitting as fact-finder—further concludes there is a reasonable factual basis for her opinion, adopts it, and holds that it is not (as Zen42 contends) "subjective and conclusory." (Dkt. 70 at 5).

In sum, the Court will overrule the objections regarding the hourly rates.

## II.    Reduction of Hours

### A.    Pre-litigation hours

Zen42's counsel billed 119 hours in the 11 months before this lawsuit was filed—53 hours for work related to settlement discussions and 66 hours discussing trial strategy and drafting the complaint and a Rule 12(c) motion. (R&R at 6–7 & n.3). The R&R substantially reduced those hours.

1.

First, the R&R reasoned that pre-filing attorneys' fees concerning settlement negotiations were disallowed under the contract because, under Virginia law, "attorney's fees are recoverable as direct damages only in the limited circumstance in which the breach of contract has forced a party to maintain or defend a suit against a third person." (R&R at 8 (citing cases); *see id*. (finding "fees incurred for pre-suit settlement negotiations are not direct damages from W&L's breach of the contract, and are instead consequential damages")).

It is true that "[d]irect damages are those which flow naturally or ordinarily form the contract breach." *Long v. Abbruzzetti*, 254 Va. 122, 126 (Va. 1997). They are compensable. *Id*. at 127. Yet the default rule is that attorneys' fees are *not* direct damages. *Id*. at 128 (reviewing exception for when breach also forces plaintiff to sue or defend against third party). So, as a general matter, Zen42 ordinarily would not be entitled to any attorneys' fees.

Yet this is a contractual fee shifting case. A benefit of contract law is that it allows

parties to contract around preexisting default rules. *See Culpeper Reg'l Hosp. v. Jones*, 64 Va. App. 207, 213 (Va. Ct. App. 2015). And when terms of a contract are clear and unambiguous, they are enforced according to their plain meaning. *Ulloa v. QSP, Inc.*, 271 Va. 72, 84 (Va. 2006).

The operative provision that provides for attorneys' fees reads as follows: Zen42 may sue "for direct damages *which shall include* all costs and expenses reasonably incurred, *including*, without limitation, *reasonable attorney fees*." (Dkt. 1-1 § 18(b)(i) (emphasis added)). In other words, the parties agreed to define—as a matter of contract—"direct damages" to include all reasonable costs and expenses, which in turn definitionally included "reasonable attorney fees." (*Id.*). Without the fee shifting provision, Zen42 likely would not have been entitled to attorneys' fees as direct damages. But with the provision, it is. The only question is whether those fees and costs were reasonable, and the Court finds that they were. The Court will therefore sustain the objection to the R&R's elimination of 53 hours for work "on pre-litigation settlement negotiations" and related tasks. (R&R at 6, 8).

Because Greenleaf and Moore billed approximately an equal number of hours in the pre-litigation phase (R&R at 7), the Court will split the 53 hours between them. This yields $6,626 in fees for Greenleaf (26.5 * $250) and $9,275 in fees for Moore (26.5 * $350), for a total additional fee of $15,901.

2.

Second, Zen42 challenges the R&R's reduction, by 65%, of its hours spent drafting the complaint and its Rule 12(c) motion. The Court agrees that a reduction was warranted because the amount of time spent on those tasks was unreasonable.[2] The complaint was only eight pages

---

[2] The Court bases this reduction on reasonableness and not—as Zen42's objection implies

long and, as Judge Ballou observed, based upon a well-known chronology of events for a single-count breach of contract lawsuit. The motion was longer but hardly complex. It largely recited the factual and procedural history of the dispute, which was quite familiar to Zen42 after engaging in 53 hours of pre-litigation settlement negotiations. What's more, as the Court contemporaneously characterized it, the motion was "thin gruel" that failed to define or explain key contractual terms, and also at times applied an overly favorable standard of review. (Dkt. 27 at 4–6).

In a supplemental exhibit, Zen42 faults the R&R's calculations of pre-litigation work as allegedly in error. (Dkt. 70 at 13). Zen42 says that it only billed 50.2 hours on the complaint and Rule 12(c) motion, but the R&R found that it billed roughly 66 hours for those tasks. Zen42 compares apples and oranges. Zen42's calculation only included the motion and complaint, but the R&R also included time "discussing trial strategy" in its figure. Additionally, Zen42's calculation still reveals significant, unreasonable overbilling. While Zen42 breaks out only 11.1 hours for the Rule 12(c) motion, it reveals *nearly 40 hours* spent drafting the 8-page complaint. Given the substantial reduction that would be taken off of that number, the Court does not find the R&R's end result to be in error.

### B.     Other objections

Zen42 objects to the recommendation of reducing, again by 65%, other hours billed during and after the underlying litigation. It asserts that the R&R erred by engaging in a prohibited "proportionality analysis." (Dkt. 70 at 13–14). Zen42 misreads the R&R.

Contrary to how Zen42 sets up its argument, the R&R does not hold that the fees were unreasonable because they exceeded the value of the case. Rather, Judge Ballou took care to

---

(dkt. 70 at 13)—on the degree of success of a given filing.

look at the totality of the circumstances. For instance, he explained that, unlike other cases awarding substantial fees, this case was short-lived, had few motions and only two parties, involved no in-court appearances, and did not proceed to (or even approach) trial. (R&R at 10–11, 12). Judge Ballou also observed that the "sheer number of internal conferences" was "unnecessary for this relatively simple case." (*Id*. at 11). Taking all of these factors into consideration holistically, Judge Ballou wrote: "Zen42's counsel simply billed too much time"; billing over 300 hours "in less than five months of litigation [was] unreasonable and excessive," and; "the number of hours expended on this case was not proportional to the underlying breach of contract claim." (*Id*. at 10, 12).

The case cited by Zen42 prohibited using "the amount of damages sought as a limit beyond which no attorney's fees will be awarded." *Lambert v. Sea Oats Condo. Assoc., Inc.*, 293 Va. 245, 257 (Va. 2017). But Judge Ballou did not do that. *See id*. at 259 (instructing court may not "say that '$6,000 in attorney's fees on a case involving a dispute of $500' is unreasonable per se, without regard to the necessary costs of effectively litigating a claim"). Instead, as just explained, the R&R (occasionally) uses proportionality terminology in comparing the hours billed to the needs, complexity, and extensiveness of the case, not the *ad damnum* amount. In sum, the R&R properly accounted for the whole litigation, did not reduce the issue to a simplistic comparison of "amount demanded" versus "fees billed," and correctly concluded that the fees here were excessive.

Zen42's next line of argument is that the reduction imposed by Judge Ballou was "arbitrary" and "not supported by *Defendant's* evidence." (Dkt. 70 at 17). But pointing to *W&L's* evidence reverses the burden of proof. "The burden remains on the party seeking an award of attorney's fees to establish that the amount sought is reasonable." *Lambert*, 293 Va. at

258 n.7. As explained in this opinion and the R&R, Zen42 failed to meet that burden. By doing so, it left to the Court the task of determining what portion of its fees was reasonable.

Zen42 further places blame on W&L for its fees, decrying its "many unfounded, meritless, obstructionist attempts to delay the progress of the case and hinder Zen42's pathway to much-deserved redress," as well as faulting the R&R for making "very little mention of the aggressive litigation strategy that W&L pursued." (Dkt. 70 at 17). Zen42 then surveys its view of W&L's tactics before observing that "[t]his entire narrative was before Judge Ballou." (Dkt. 20 at 18–21). Indeed. The fact that Judge Ballou nonetheless found the fees excessive and unreasonable indicates that Zen42's "narrative" was not the whole story.[3]

## III.    Experts on Fee Petition

The R&R refused to award fees for three experts Zen42 retained solely for the attorneys' fee petition. (R&R at 16). Judge Ballou allowed fees for only one of the three. Zen42 takes exception to this decision. The objection will be overruled.

Zen42 did not even utilize one of the three experts in its fee petition briefing, noting that his opinions were "duplicative." (Dkt. 54 at 9 n.1). What's more, Judge Ballou—who frequently handles fee petitions by referral from district judges—has been a magistrate judge in this district for several years, and before that was a respected litigator in this district. He is extraordinarily well-positioned to know whether using three experts solely for the adjudication of fees is reasonable or, as he put it, "unnecessary." (R&R at 16). I agree with Judge Ballou's assessment. The touchstone of fees and costs is reasonableness, and the use of three experts

---

[3]    Zen42 also again challenges W&L's fee expert as unqualified and providing unsupported opinions. (Dkt. 70 at 15–17). The Court reaffirms its decision *supra* that Ms. Bentley is qualified as an expert and that her opinions are sound. In any event, her opinions are not necessary to the finding that Zen42's fees are unreasonable.

solely for the fee issue was, in the context of this case, unreasonable.[4]

## IV. Reduction of Fees-on-Fees

The R&R also reduced by 65% Zen42's billed hours for its work on the attorneys' fee petition. (R&R at 13–15). The R&R observed that Zen42's attorneys billed approximately 200 hours to the fee petition, which was roughly a third of the total hours the attorneys spent on the entire case. (*Id*. at 14). The R&R concluded "the extensive hours Zen42's counsel devoted to the attorney's fees issue [was] unreasonable and excessive." (*Id*.).

Zen42 correctly identifies the issue as "whether the fees-on-fees were reasonable." (Dkt. 70 at 23). And Zen42 concedes that its attorneys were "thoroughly familiar" with the case. (*Id*. at 24; *see Daly v. Hill*, 790 F.3d 1071, 1080 (4th Cir. 1986) (affirming, in civil rights case, district court's conclusion that fees-on-fees were "totally unreasonable" based on several factors, including counsel's familiarity with case)). The Court agrees that the fees billed on the fee petition were excessive in the context of this short-lived breach of contract case, and it further finds that applying Judge Ballou's proposed reduction is consistent with other cases. *See Garcia v. Montgomery Cty., Md.*, No. CV TDC-12-3592, 2018 WL 1441189, at *7 (D. Md. Mar. 22, 2018) (finding 40 hours on a fee petition to be reasonable when case—unlike this one—proceeded through extensive summary judgment proceedings and "settled just short of trial"); *Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 770 (D. Md. 2001) ("[W]here the legal questions were not difficult and the case was not complex, it was unreasonable to devote more than twenty percent (20%) of the time expended for the main representation toward preparing a

---

[4] Zen42 reiterates its objection to W&L's fee expert and challenges her opinion on the fee expert issue. The Court holds the three experts on fees unreasonable without reference to W&L's fee expert, as the burden is on the claimant to assert the reasonableness of its fees. In any event, the Court has previously explained it finds W&L's fee expert qualified to opine on billing and related practices in this jurisdiction.

– 9 –

petition for attorneys' fees." (citing *EEOC v. Serv. News Co.*, 898 F.2d 958, 966 (4th Cir. 1990))); *Virginia-Pilot Media Cos., LLC v. Dep't of Justice*, No. 2:14CV577, 2016 WL 4265742, at *6 (E.D. Va. Aug. 10, 2016) (reducing by 60% "excessive" fees on fees that amounted to one-third of total amount billed in case).[5]

## V. W&L's objection to Zen42's Expert

Lastly, W&L lodges its own objection to the award of over $26,000 in fees for Zen42's technical expert, Jack Soost. (Dkt. 72). W&L presents two arguments: (1) the expert fees were excessive and thus unreasonable given the lifespan of the case, and; (2) Soost's time entries were "insufficiently detailed" and block-billed. (*Id.* at 3–5).

Those arguments were not in W&L's opposition brief to Zen42's motion for fees. (*See generally* dkt. 58). Instead, W&L conclusorily asserted that "Plaintiff's expert billed an exorbitant amount." (*Id.* at 15). So Judge Ballou rightly observed that "W&L does not provide a specific reason to suggest that the expert fees of Mr. Soost are unreasonable or that the specific hours spent by [him] were unnecessary and excessive"; Judge Ballou thus awarded those fees. (R&R at 15). Only now, after Judge Ballou issued his R&R, has W&L developed a meaningful argument against Soost's fees.

"A magistrate's decision should not be disturbed on the basis of arguments not presented to him." *ContraVest Inc. v. Mt. Hawley Ins. Co.*, 273 F. Supp. 3d 607, 620 (D.S.C. 2017). "Courts have frowned upon objections to R&Rs that make new arguments" before the district

---

[5] Zen42 asserts that it is error to reduce fees-on-fees for being excessive in comparison to the fees generated by the underlying litigation. It is true that the fees-on-fees here are excessive in proportion to the overall fees and hours billed. But they are also excessive in light of the needs, complexity, and circumstances of the case on the whole. In any event, by overbilling during the pre-litigation and litigation stages of the case, it would be unsurprising (but still unacceptable) for counsel to overbill when preparing a fee petition summarizing the inflated original fees.

court. *Elliott v. Oldcastle Lawn & Garden, Inc.*, No. 2:16-CV-01929-DCN, 2017 WL 1206408, at *3 (D.S.C. Mar. 31, 2017) (compiling published, non-Fourth Circuit cases). Such a wait-and-see approach contravenes a central purpose of magistrate judge referrals: to focus the parties' attention on the issues, narrow the number and scope of disputes, and thus conserve judicial resources. *Jesselson v. Outlet Assocs. of Williamsburg, Ltd. P'ship*, 784 F. Supp. 1223, 1228–29 (E.D. Va. 1991).

"However, it appears most districts in the Fourth Circuit have instead followed the holding in *United States v. George,* 971 F.2d 1113, 1118 (4th Cir.1992)." *Deakins v. Pack*, 957 F. Supp. 2d 703, 735 n.48 (S.D.W. Va. 2013). *George* held that a district court must consider objections to the magistrate judge's ruling, even if the objections are new arguments on an issue. So, W&L's newfound arguments must be considered. *See, e.g.*, *St. John v. Moore*, 135 F.3d 770, 1998 WL 71516 (4th Cir. 1998); *Samples v. Ballard*, 860 F.3d 266, 271–72 (4th Cir. 2017) (extending *George* to habeas context).

Nonetheless, on the merits, the Court overrules W&L's objection. Judge Ballou acknowledged the complexity of the underlying technology at issue in this case, making a technical expert necessary. (R&R at 15). Moreover, the case did not settle until after Soost spent the time and effort to familiarize himself with the record and prepare his report. The Court does not believe that billing approximately three workdays to review documents, or conferencing with attorneys for roughly a day and a half, is necessarily unreasonable in light of the number of documents produced in this case and the technical issues presented. And without endorsing the handful of other billing entries that W&L (still generically) identifies as problematic (dkt. 72 at 4–5), the Court finds the fees requested for technical expert Soost were on the whole reasonable and identifiable. Mathematical precision is not required when assessing fees and costs. *See*

*Knussman v. Maryland*, 73 F. App'x 608, 613 n.3 (4th Cir. 2003); *ECOS, Inc. v. Brinegar*, 671 F. Supp. 381, 394 (M.D.N.C. 1987); *Dillon v. BMO Harris Bank, N.A.*, No. 1:13-CV-897, 2017 WL 564501, at *7 (M.D.N.C. Feb. 10, 2017), *aff'd sub nom. Six v. Generations Fed. Credit Union*, 891 F.3d 508 (4th Cir. 2018).

\* \* \*

In conclusion, the objections to the R&R will be largely overruled. The Court will sustain the objection to the exclusion of 53 hours billed for pre-litigation work by Zen42's counsel, and add the corresponding amount of fees ($15,901) to the amount recommended by the R&R ($96,180.48). That comes to a total fee award of $112,081.48.

Entered on this __26th__ day of September, 2018.

*/s/ Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE